[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Jose Luiz Montagn, a principal of Route 59, brings this action to collect on a contract for the sale of 20 motorcycles. He claims he and the defendant, Central Sports, Inc., entered into a contract for said sale at a price of $169,602.00. The plaintiff also claims that he paid $104,885.00 to the defendant by wiring the funds to its president, Brian Burchman, February 13, 1998. He claims the defendant has refused to deliver the motorcycles or return the payment despite demands for the same.
The defendant, in his answer to the complaint, admitted that "on or about February 13, 1998, the plaintiff paid the sum of $104,855.00 to the defendant by wiring funds in said amount to the defendant's bank account . . ." He denies that there was an agreement or that he has refused to return the money or deliver the motorcycles.
 Facts
The plaintiff hereby submits the following findings of fact:
1. The plaintiff, Route 59, is a corporation incorporated under the laws of Brazil with its principal place of business in San Paulo, Brazil.
2. The plaintiff is in the business of import, purchase and sale of motorcycles.
3. Jose Luiz Montagn is a principal of Route 59 and is responsible for the operation of Route 59's business.
4. The defendant, Central Sports, Inc., is a Connecticut corporation in the business, of selling motorcycles, including exporting motorcycles to foreign countries.
5. Brian Burchman is the president of the defendant CT Page 13774 corporation.
6. The plaintiff corporation, Route 59, is not affiliated with or associated with the Brazilian corporations named Cinquenta E Nove Comercio Importacao E Exportacao De Veiculo's Ltda and Nevada Commercial Importacao Exportacao Ltda and, instead, is a separate entity.
7. Luis Ozilak has no interest in, affiliation with or position in the Route 59 corporation.
8. The plaintiff, Route 59, and the defendant, Central Sports, entered into a contract for the defendant to sell to the plaintiff twenty motorcycles. This contract evolved through the course of negotiations in January and February of 1998 between the plaintiff and the defendant, concerning such items as the types of motorcycles to be sold and the cost to the plaintiff for the purchase of motorcycles. The negotiations, which culminated in a contract being entered into, are evidenced by the plaintiff's exhibits.
9. The agreed upon purchase price for said motorcycles was $169,602.00.
10. Said contract was entered into when on February 17, 1998, Jose Luiz Montagn, on behalf of the plaintiff, wired $104,855.00 to the defendant in partial payment for the motorcycles listed in the price list of February 10, 1998.
11. The money wire on February 17, 1998 was made by Route 59 through Golden Cambios. Golden Cambios is a Brazilian entity which is in the business of effectuating the transfer of money from Brazil to other countries, including calculating the exchange rate. Golden Cambios obtains a fee for its services.
12. Golden Cambois is not affiliated with Route 59 or with the other Brazilian motorcycles importing companies with which Central Sports had previously dealt.
13. The funds wired on February 17, 1998 were withdrawn from two bank accounts: one account of the plaintiff, Route 59, from which the sums of $14,805.00 and $12,888.00 were withdrawn and one account of Said Haddad Balbus, another principal of Route 59, from which the sum of 96,263.00 was withdrawn. CT Page 13775
14. The sum of $104,855.00 was received from Route 59 by Central Sports.
15. The difference between the total amount withdrawn and the amount sent to the plaintiff reflects the exchange rate between Brazilian and American currency and Golden Cambios' fee for effectuating the transfer of the money from Brazil to the United States.
16. Central Sports failed to ship 20 motorcycles to Route 59 as previously agreed to and, also, provided Route 59 with no information as to the VIN number for the motorcycles to be shipped.
17. Because Route 59 did not receive any motorcycles from Central Sports after partial payment of the amount due had been made on February 17, 1998, Mr. Montagn came to Connecticut in early March of 1998 to discuss this matter with Brian Burchman of Central Sports.
18. Mr. Montagn, along with Alipio Rodriguez, who had previously put Mr. Montagn in contact with Central Sports, met with Brian Burchman in March of 1998, but were unable to resolve the breach of contract by Central Sports.
19. During the same visit to Connecticut in March of 1998, the plaintiff retained Anderson Ferdon to represent it in connection with the Central Sports breach of its contract with Route 59.
20. Central Sports has not repaid Route 59 the payment of $104,855.00 and has not shipped the 20 motorcycles it contracted with Route 59 to ship.
21. Mr. Montagn testified that he had collected deposits of 10% of the Purchase price of each of the motorcycles from customers of Route 59. Because the motorcycles were not delivered, Route 59 was required to reimburse the 10% of the purchase price plus an additional 10% to each of the 20 purchasers, in accordance with Brazilian law.
22. Mr. Montagn testified, additionally, that Route 59 suffered from a loss of customer confidence because of the non-delivery of the motorcycles by Central Sports. CT Page 13776
The defendant, through Burchman, claims he has done business with other Brazilian entities, but not with the plaintiff. He claims that he had a contract with another company to sell them motorcycles. He further claims that he delivered the motorcycles to that company, but failed to collect the purchase price. He then testified that on February 17, 1998, he received a wire transfer from Golden Cambios, the other company. He claimed he talked to Luis Ozilak and confirmed that the latter had sent the wire transfer in the amount of $104,885.00. The defendant denied that the money was from Montagn. The court does not find this testimony to be credible and finds that the money was in fact sent by the plaintiff to the defendant.
 Discussion
Based upon all the evidence and the exhibits, the court finds that there was a contract between the parties based upon the prices listed in the February 10, 1998 price list of the defendant. The plaintiff wired $104,885 on February 17, 1998. The court is convinced by the evidence that Montagn sent the money at Burchman's request prior to the shipping of the motorcycles. The defendant acknowledged, in its pleadings, that it received the money from the plaintiff. Burchman now tries to claim it came from Ozilak. However, he produced no evidence of this at the trial, nor did he show any connection between the plaintiff's company and Ozilak. The court, therefore, finds that there was a contract between the parties and that the defendant received the money and refused to ship the motorcycles or return the money. It is, therefore, in breach of contract.
The plaintiff is entitled to recover $104,885.00 which it paid. It also claims lost profits. The plaintiff presented evidence that it was required to return money it had accepted from customers. It was required to return the 10% deposit and an additional 10% because it was required by Brazilian law. The cost of the motorcycles was $169,601.16. Ten percent of that amount is $16,960.21. In addition, it had to return an additional $16,960.21 to each customer.
The plaintiff also claims that since he was unable to sell the motorcycles, he lost a profit of 20% on each motorcycle for a total loss of $208,000.00. The plaintiff also claims it is entitled to recover interest of 10% per year under Connecticut General Statutes § 37-3a and costs. CT Page 13777
The court agrees with the plaintiff that it should recover the $104,855.00 that it paid to the defendant. It is also entitled to recover the 10% that it was required to return to its customers and the additional 10% it was required to return under Brazilian law. However, the court does not find that the plaintiff established by a preponderance of the evidence that it lost 20% profit on each motorcycle. Nor does the court find sufficient evidence to support a claim for loss of good will.
Accordingly, judgment may enter for the plaintiff in the amount of $104,855.00 plus 20% of $169,601.16 for a total of $138,775.20. The court also awards the plaintiff statutory interest Connecticut General Statutes § 37-3a of 10% per year from the date the debt was payable, March 5, 1998, the date the plaintiff made demand for payment, plus costs.
D. Michael Hurley, Judge Trial Referee